# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **LISA M. WOLAK**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 10 C 6192 |
| v. | ) | |
| | ) | Magistrate Judge |
| **MICHAEL J. ASTRUE**, | ) | Martin Ashman |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lisa M. Wolak ("Plaintiff" or "Ms. Wolak") seeks judicial review of a final

decision of Defendant, Michael J. Astrue, the Commissioner of Social Security

("Commissioner"), denying Plaintiff's application for Disability Insurance Benefits ("DIB") and

Supplemental Security Income benefits ("SSI") under Title II of the Social Security Act. Before

the Court is Plaintiff's motion for summary judgment. The parties have consented to have this

Court conduct any and all proceedings in this case, including entry of final judgment. 28 U.S.C.

§ 636(e); N.D. Ill. R. 73.1(c). For the reasons stated below, Plaintiff's motion is granted in part

and denied in part.

## I.  Legal Standard

In order to qualify for DIB, a claimant must demonstrate that he is disabled. An

individual is considered to be disabled when he is unable to "engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  An individual is under a disability if he is unable to do his previous work and cannot, considering his age, education, and work experience, partake in any gainful employment that exists in the national economy.  *Id*.  Gainful employment is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).

A claim of disability is determined under a five-step analysis. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  First, the SSA considers whether the claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(4)(I).  Second, the SSA examines if the physical or mental impairment is severe, medically determinable, and meets the durational requirement. 20 C.F.R. § 404.1520(4)(ii).  Third, the SSA compares the impairment to a list of impairments that are considered conclusively disabling.  20 C.F.R. § 404.1520(4)(iii).  If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation proceeds to step four. *Id*.  Fourth, the SSA assesses the applicant's RFC and ability to engage in past relevant work. 20 C.F.R. § 404.1520(4)(iv).  In the final step, the SSA assesses whether the claimant can engage in other work in light of his RFC, age, education and work experience.  20 C.F.R. § 404.1520(4)(v).

Judicial review of the ALJ's decision is governed by 42 U.S.C. § 405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*,

402 U.S. 389, 401 (1971).  The court reviews the entire record, but does not displace the ALJ's judgment by reweighing the facts or by making independent credibility determinations.  *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).  Instead, the court looks at whether the ALJ articulated an "accurate and logical bridge" from the evidence to her conclusions.  *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008).  Thus, even if reasonable minds could differ whether the Plaintiff is disabled, courts will affirm a decision if the ALJ's decision has adequate support.  *Elder*, 529 F.3d at 413 (citing *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

## II.  Background Facts

Plaintiff filed for SSI on March 18, 2008 and for DBI on April 14, 2008, claiming that she had become disabled as of July 3, 2007.  Her claims were denied initially and again upon reconsideration, after which a hearing was held on September 1, 2009 before administrative law judge ("ALJ") Janice Brunning.  The ALJ issued a decision on October 2, 2009, finding that Plaintiff was not disabled.  The Appeals Council denied review, and the ALJ's ruling became the Commissioner's final decision.  Plaintiff then filed the instant action on September 28, 2010.

### A.  Medical History

At the time of the hearing, Ms. Wolak was a forty-four year old woman with a history of back pain stemming from an earlier automobile accident.  On July 3, 2007, a man who is described in the record as being drunk at a party, lifted Ms. Wolak, dropped her onto a concrete floor, and then fell on top of her.  The next day she presented at the Adventist Hinsdale Hospital in Hinsdale, Illinois complaining of pain on her left side, including the knee, chest, and shoulder.

An x-ray of the knee showed minor tissue swelling, and another of the lower spine indicated some narrowing of disc space. (R. 233, 244). Her family physician, Dr. Umang Patel, stated on July 10 that the x-rays were normal and diagnosed her as having an acute cervical sprain, as well as sprains in her thoracic and lumbar spine. (R. 322). He prescribed an anti-inflammatory, the pain medication, Norco, and the anti-anxiety drug, Xanax. (R. 322-23). One week later, Dr. Patel ordered a number of MRIs for Ms. Wolak. One of these studies showed that she was suffering from degenerative disc disease at L4-L5, with a narrow disc protrusion causing mild impingement on the thecal sac. Mild bulges also existed at L2-L3 and L3-L4. (R. 253).

Ms. Wolak eventually followed up by beginning treatment with orthopedic surgeon Dr. Ryan Hennessey on October 26, 2007. Dr. Hennessey agreed that the disc bulges at L2-L3 and L3-L4 were "very minimal" and that her thoracic spine was normal. (R. 258). But he recommended an MRI of her cervical spine, which showed moderate disc bulging at C5-C6 that impinged on parts of the dural sac and the cervical spinal cord. Mild herniation was noted at C6-C7, with moderately severe spinal stenosis at both joint levels. (R. 236). Dr. Hennessey reviewed the MRI results with her on November 16, 2007 and noted that she had true herniation at the C5-C6 level that might require a cervical epidural. He also believed that a lumbar epidural might be necessary as well to treat her L4-L5 disc problem. For the time, however, he noted that she had muscle strength of a five out of five and recommended more conservative treatment such as physical therapy. Failing that, he told Ms. Wolak that an anterior cervical discectomy and fusion might be necessary. (R. 264).

Ms. Wolak claims that she followed up on December 6 with pain specialist, Dr. Nicholas Kondelis. The Court states this only in the conditional because the treatment note

for this meeting refers to a Ms. Sharon Hoff instead of Plaintiff.[1]  She certainly met with

Dr. Kondelis five days later, when Dr. Kondelis described Plaintiff as unable to sit, stand, or lie

down for any length of time despite the fact that she had been taking Xanax and Flexeril.

(R. 274).  The doctor noted that she was experiencing dysesthesias with numbness and tingling

in her hands and feet that were present while standing, sitting, and walking.  Ms. Wolak was

prescribed Neurontin and Tramadol and given trigger point and epidural injections.  When she

returned on January 2, 2008, Ms. Wolak reported a 60 percent improvement in her symptoms,

though she was still showing tenderness and muscle spasms "in a diffuse pattern."  (R. 278).  The

injections given on the preceding visit were repeated.

On January 15, however, Ms. Wolak's condition had worsened.  She showed no

significant improvement from the January 2 injections and reported her pain level as nine out of

ten.  Dr. Kondelis replaced her weaker pain medication of Tramadol with additional doses of

Norco, increased the Neurontin, and prescribed Elavil to help with her with neuropathic pain and

insomnia.  (R. 282).  To help her neck pain, Dr. Kondelis also performed a cervical steroid

injection.  Ms. Wolak reported three weeks later that the injections had been somewhat helpful

but that she was now having increased neck and back pain.  As a result, Dr. Kondelis repeated

the cervical injection at C7-T1 and performed a trigger point injection and epidural for the right

sacroiliac joint.  (R. 353).

On March 4, Ms. Wolak expressed serious concerns about her increased pain, especially

in the neck and upper back.  Dr. Kondelis reported that she was "emotional and tearful" and that

---

[1]  The meeting appears to have been part of ongoing treatment by Ms. Hoff with
Dr. Kondelis, because the treatment note remarks that the patient in question had previously had
multiple thoracic and lumbar epidurals, as well as trigger point injections.  (R. 272).

she complained that her medications were insufficient to control her pain. (R. 285). His examination showed "profound" tenderness in the upper back muscles and joints, with some radicular component into her arms. As a result, Dr. Kondelis increased Ms. Wolak's pain medications and added a sustained-release morphine drug in the form of MS Contin. (R. 286). One week later, he performed epidurals, trigger point injections, and a right sacroiliac joint injection. (R. 287). Additional injections were given on April 11, and Dr. Kondelis wrote on April 24 that Ms. Wolak "cannot work because she is suffering from and being treated for conditions and a severe injury which prevent her from being able to work." (R. 346, 286).

By March 2008, Ms. Wolak had returned to see her orthopedist, Dr. Hennessey. That physician noted that she was continuing to experience neck pain with particular tenderness at the C6 level. Accordingly, Dr. Hennessey recommended on March 21 that she have an anterior cervical discectomy and fusion at C5-C6 and referred her to neurosurgeon Dr. Yogesh Ghandi. (R. 289). After noting that she was experiencing numbness in both hands and shoulders, Dr. Ghandi recommended surgery if more conservative measures were insufficient to resolve Ms. Wolak's condition. (R. 321). Problems with her insurance delayed the surgery, and she underwent yet more injections from Dr. Kondelis on May 23, June 2, and June 27, 2008. (R. 474-75). On July 29, however, Ms. Wolak had the cervical discectomy that Dr. Hennessey had recommended. (R. 500-523). Her condition following this procedure is less than clear, as Ms. Wolak does not point to any treatment notes other than the July 29 post-operative report stating that she claimed that her arm pain was "gone." (R. 529). The only remaining evidence from Dr. Hennessey is an Ocober 7, 2008 medical assessment stating that her prognosis following the surgery was "good" and that her condition had "improved." (R. 542).

Ms. Wolak's treatment notes make numerous references to the anxiety she was experiencing as her condition progressed.  On January 14, 2008, her primary physician, Dr. Patel, diagnosed her as having a panic disorder and agoraphobia with moderate panic attacks. (R. 329).  On October 8, 2008, Dr. Terrance McGovern conducted a psychological examination of Ms. Wolak at the request of the SSA.  Dr. McGovern determined that her memory was mildly impaired as a possible result of her pain medication but that her comprehension and arithmetic abilities were within normal limits.  (R. 547).  He diagnosed her as having a depressive disorder NOS (not otherwise specified) with a possible amnesiac disorder related to pain medication. (R. 547).

### B.        Hearing Testimony

At the administrative hearing, the ALJ took testimony from Ms. Wolak and the vocational expert ("VE") James Green.[2]  Ms. Wolak stated that she had had one year of college and had performed the past work of an office manager, sales coordinator, and administrative assistant.  (R. 31).  She described her July 3, 2007 injuries as including a broken neck, fractures to her knee and elbows, and an injury to her rotator cuff.  (R. 32).  She is able to sit or stand for only ten minutes at a time and experiences difficulty in climbing stairs, stooping, kneeling, or bending.  (R. 32-33).  Ms. Wolak stated that she could lift a half-gallon of milk with her right hand and perhaps up to two pounds with her left.  (R. 32).  Difficulties with her left arm make it hard for her to reach overhead or in front, and she cannot use her left hand at all.  (R. 33).  She

---

[2]  As Ms. Wolak does not allege any error related to the VE's testimony, we omit a recount of the statements made by Mr. Green.

can drive a few times a week but cannot perform most household chores other than unloading the top part of the dishwasher. (R. 34-36). She described her social life has having diminished significantly since her injury; she attends church but is no longer able to enjoy the hobbies she used to engage in before the accident. She has also given up going to the gym and engaging in the kind of cooking she used to enjoy. (R. 42-43). Ms. Wolak stated that she did not have a "typical" day but ordinarily arises around one or two in the afternoon after having significant difficulty in sleeping. Her day consists largely of taking pain medications, using ice packs to diminish her pain, and sleeping. (R. 36-37). She ordinarily goes to bed around 9:30 or 10:00 p.m. but experiences nightmares and severe anxiety. (R. 37).

Ms. Wolak testified that her neck pain has been better since the cervical discectomy was performed in 2008. She can now feel her arms and legs and no longer experiences shooting pain in her limbs. (R. 39). Her lower back pain, however, continues to pose particular problems in the hip area. (R. 40). Standing and sitting aggravate her pain. She described the injections that were given to her as helpful in controlling the pain, though they did not cure her condition. (R. 42). She also drinks several glasses of wine on occasion to help alleviate her pain. (R. 44).

### C.    The ALJ's Decision

On October 2, 2009, the ALJ issued her decision finding that Ms. Wolak was not disabled. At Step 1, the ALJ found that Ms. Wolak had not engaged in substantial gainful activity since her alleged onset date of July 3, 2007. The ALJ determined at Step 2 that she suffered from the severe impairments of cervical myelopathy, lumbar disc narrowing, and a depressive disorder. No impairment or combination of impairments were found at Step 3 to meet

or medically equal one of the listed impairments.[3]  Before moving to the next steps, the ALJ

assessed Ms. Wolak's residual functional capacity ("RFC") as the ability to perform sedentary

work, with the capacity to stand or walk for two hours a day and sit for at least six.  She requires

a sit/stand option and can use her left upper extremity frequently.  The ALJ determined that

Ms. Wolak would be limited to unskilled work that does not involve detailed, complex

instructions.  In so doing, the ALJ also found that her testimony at the hearing was not entirely

credible.  Ms. Wolak was found at Step 4 not to have the RFC to carry out her former work.  At

Step 5, however, the ALJ determined that other jobs that she can perform exist in significant

numbers in the national economy.


## IV.  Discussion

Ms. Wolak objects to the ALJ's decision on five grounds.  According to her, the ALJ

erred by: (1) finding her testimony not to be entirely credible; (2) not giving sufficient weight to

---

[3]  At Step 3, the ALJ applied the "special technique" described in 20 C.F.R. § 404.1520a to determine that Ms. Wolak had mild and moderate limitations in several functional areas. Social Security Ruling 96-8p prohibits such evaluations from constituting, at least without more, a RFC finding.  *See* SSR 96-8p.  Instead, an ALJ is required to provide "a more detailed assessment" of the factors set forth in Paragraphs B and C of Listing 12.00.  SSR 96-8p.  The ALJ relied on boilerplate language frequently cited in cases of this type at the end of her special technique analysis, stating that "the following [RFC] assessment reflects the degree of limitation the undersigned has found" by means of the special technique.  (R. 23).  We do not remand on this issue, as Ms. Wolak has not objected to this finding.  However, the ALJ gave no indication in this language that her RFC finding took into consideration the *combined* effects of the limitations found under the special technique and the limitations that stemmed from Ms. Wolak's severe impairments.  SSR 96-8p makes clear that an ALJ must consider the aggregate impact of all of a claimant's impairments, "even those that are not 'severe.'" SSR 96-8p.  Courts have rejected an ALJ's reliance on language identical to that used in this case as insufficient to meet this standard.  *Alesia v. Astrue*, 789 F. Supp.2d 921, 933-34 (N.D. Ill. 2011).  The Court agrees with this reasoning.  On remand, the ALJ shall explain how her RFC determination accounts for the combined effects of all of Ms. Wolak's limitations, as required by SSR 96-8p.

the opinion of her treating physicians; (3) failing to consider a closed period of disability; (4) omitting certain evidence that was favorable to her; and, (5) not ordering a consultative examination.

### A.     The Credibility Issue

Ms. Wolak contends that the ALJ incorrectly assessed her credibility by failing to consider the factors for evaluating this issue provided in SSR 96-7p and by not articulating sufficient reasons for the credibility determination.  A court reviews an ALJ's credibility decision with deference because "the ALJ is in the best position to determine the credibility of witnesses." *Craft*, 539 F.3d at 678.  An ALJ should consider the entire case record and give specific reasons for the weight given to an individual's statements.  SSR 96-7p; *see also Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005) (stating that an ALJ "must articulate specific reasons for discounting a claimant's testimony as being less than credible.").  Factors that should be considered include the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, the types of treatment received, any medications taken, and functional limitations.  *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006); *see also* 20 C.F.R. § 404.1529(c)(3); SSR 96-7p.  Accordingly, a reviewing court must be mindful that reversal on this ground is appropriate only if the credibility determination is so lacking in explanation or support that it is "patently wrong." *Elder*, 529 F.3d at 413-14.

In this case, the ALJ found that "the claimant's statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 24).  The

Commissioner argues that this satisfies the requirements of SSR 96-7p, which governs the assessment of a claimant's credibility, because the ALJ's reference to Ms. Wolak's RFC assessment implicitly, if not explicitly, determined that her testimony was at least partially credible. The Commissioner claims that the ALJ credited that part of her testimony that corresponds with the RFC and discounted the statements that contradicted it.

The Court finds this argument unpersuasive. The Commissioner overlooks that courts have rejected statements identical to that used by the ALJ in this case as boilerplate language that fails to satisfy the discussion requirements of SSR 96-7p. *See Cruz v. Astrue*, 746 F. Supp.2d 978, 988-89 (N.D. Ind. 2010); *Martinez v. Astrue*, No. 2:10-CV-370, 2011 WL 4834252, at *10 (N.D. Ind. Oct. 11, 2011). *Cruz* and other cases extend the Seventh Circuit's rejection of similar language stating that an ALJ errs by finding a claimant's testimony to be "not entirely credible." *Parker v. Astrue*, 597 F.3d 921, 922 (7th Cir. 2010). Courts have found that no meaningful distinction exists between the boilerplate language cited in *Parker* and that used in this case because both fail to explain how the ALJ reached his credibility assessment. Both forms of language also fail to distinguish between those portions of a claimant's testimony that are found to be credible and those that are not. *See Rybolt v. Astrue*, No. 1:10-cv-581, 2011 WL 4349404, at *5 (S.D. Ind. Sept. 15, 2011) (stating that no significant difference exists because "in either case, no there is no discussion of the weight given to the pertinent statements."). The Court agrees with this reasoning, at least when no further explanation is provided by an ALJ to support a credibility finding; as SSR 96-7p clearly states, an ALJ "must" provide "specific reasons for the findings on credibility." SSR 96-7p.

In addition to such formulaic language, the ALJ also supported her credibility decision by citing evidence related to Ms. Wolak's comlpaints about her elbow pain.[4]  The Commissioner contends that this sufficiently addresses the ALJ's reasons for finding Plaintiff to be only partially credible.  The Court agrees that the ALJ fully discussed the reasons why Ms. Wolak's elbow pain was not as pronounced as she claimed, but that fact does not necessarily mean that substantial evidence supports the ALJ's credibility finding as a whole.  The Commissioner overlooks that Ms. Wolak's statements concerning her elbow constituted only a small portion of her hearing testimony.  Plaintiff primarily discussed problems related to her cervical myelopathy and lumbar disc problems, medical issues that the ALJ found at Step 2 constituted "severe" impairments.  The Court finds it difficult to understand how an ALJ can evaluate the credibility of allegations related to a claimant's severe impairments only by discussing testimony concerning an unrelated non-severe impairment.  Social Security Ruling 96-7p is clear that an ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's assessment and the reasons for that weight."  SSR 96-7p.  The ALJ's discussion of Ms. Wolak's elbow fails to

_____

[4]  This was the only reason specifically cited by the ALJ concerning credibility.  The ALJ did discuss Ms. Wolak's "mental limitations" in the same paragraph as the elbow condition, apparently referring to the severe impairment of depression found at Step 2.  However, the Commissioner does not defend the credibility assessment on this ground.  The ALJ herself did not make any specific conclusions about testimony related to Ms. Wolak's depression.  Moreover, even if the ALJ intended this portion of the decision to be part of the credibility assessment, it fails to support the ALJ's conclusion that testimony concerning Ms. Wolak's physical impairments was not fully credible.

meet this standard because it sheds no light on why the ALJ decided to discount testimony concerning Plaintiff's other limitations.

The Commissioner's overlooks that the ALJ gave no indication that she considered large portions of the evidence related to the credibility factors set forth in SSR 96-7p. That Ruling requires an ALJ to consider, in part, the "location, duration, frequency, and intensity of the individual's pain" based on a review of the entire record. SSR 96-7p. The ALJ's only discussion of this issue included some of Ms. Wolak's statements made at the hearing and three specific notations related to pain: the referral to a pain clinic and two complaints of neck and back pain made to Dr. Hennessey. (R. 23-24). While it is true that an ALJ is not required to discuss every piece of evidence, these citations seriously understate the nature and extent of the complaints of persistent pain that Ms. Wolak made to her treating physicians. The record is replete with pain-related complaints that the ALJ gave no indication that she took into consideration. As only two examples, the Court notes that the ALJ did not acknowledge the fact that Plaintiff told Dr. Kondelis on January 15, 2008 that her pain was a nine out of ten, or that she reported to him on May 8 of that year that her pain was "very poorly controlled." (R. 282, 387). If the ALJ, in fact, found that Plaintiff's testimony on the intensity of her pain was not credible – and the decision does not state whether that is the case or not – she was required to provide some explanation for that conclusion so that a reviewing court can determine how the ALJ moved from the record evidence supporting Ms. Wolak to the credibility assessment itself.

Social Security Ruling 96-7p also requires an ALJ to consider treatments a claimant has had to relieve her symptoms. Here, the ALJ took some notice of the treatment Ms. Wolak received after she injured her back. She stated, for example, that Dr. Kondelis wrote on

March 13, 2008 that Plaintiff had already received two cervical injections.  The ALJ also noted in generalized terms that Ms. Wolak "received more injections into the affected areas."  (R. 23).  However, this constituted the entirety of the ALJ's consideration of the treatments provided by Dr. Kondelis.  Such a discussion significantly fails to acknowledge the extent of Plaintiff's treatment history with Dr. Kondelis, which began in December 2007 and lasted at least through June 2008.  It also overlooks the fact that Plaintiff received at least fourteen injections during the course of her treatment.[5]  Contrary to the ALJ's citation of only those instances where Ms. Wolak reported improvements, a number of these injections provided little or no relief.  (R. 23).

Ms. Wolak's treatment history shows that she persistently sought relief for her condition from a variety of physicians.  "Persistent attempts by the individual to obtain relief of pain . . . may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms." SSR 96-7p.  Such distress is clearly evidenced in this case by the fact that Ms. Wolak presented on occasion to her physicians with marked concerns about her condition.  Dr. Kondelis, for example, stated on March 4, 2008 that she was "emotional and tearful" because her pain medication was not working.  (R. 285).  The ALJ did not consider this evidence or any of the numerous concerns Ms. Wolak expressed to her physicians about pain.  Given the nearly 600 page record in this case, the ALJ was obligated to do more than state in broad terms that Dr. Kondelis provided "more injections into the affected areas" after two initial cervical injections were administered.  (R. 23).  She was required to give some consideration to the

_____

[5]  This includes at least one epidural steroid injection Ms. Wolak received by a physician other than Dr. Kondelis.  (R. 279).

longitudinal record that plainly evidences an on-going effort by both Ms. Wolak and her physicians to relieve her pain and to explain why Ms. Wolak's credibility should be discounted in light of such evidence.[6]

Also notably absent from the ALJ's decision was a proper discussion of "[t]he type, dosage, [and] effectiveness . . . [of] any medication the individual takes or has taken to alleviate pain or other symptoms."  SSR 96-7p.  The ALJ's discussion was limited to stating that Ms. Wolak "was prescribed morphine, Neurontin and other narcotic medications."  (R. 24). Ms. Wolak was, in fact, given an extensive array of pain medications, including other non-narcotics.  She testified that, other than MS Contin, none of them were very helpful in managing pain, an allegation she also made to her physicians on numerous occasions.  The ALJ took no notice of this statement or the shifting array of medication regimes given to control Ms. Wolak's cervical and lumbar pain.  Especially striking in this regard is the fact that the ALJ ignored Ms. Wolak's clear testimony that she could no longer afford her pain medication.  Instead, the ALJ took her statement to mean that Plaintiff had discontinued taking medication for anxiety and depression because of money problems.  (R. 24).  Such a conclusion seriously misconstrues Ms. Wolak's testimony.  Not only did she not state what the ALJ attributed to her, she specifically claimed that she was still taking Xanax for her anxiety.  (R. 37).

---

[6] As noted above, Ms. Wolak argues that the ALJ overlooked significant portions of the record that were favorable to her case.  An ALJ cannot selectively choose to consider only evidence that is unfavorable to a claimant, but the adjudicator is also not required to consider every piece of evidence that exists.  *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001).  The Court need not address all the evidence Ms. Wolak points to in her motion because the ALJ will be required on remand to expand her consideration of the record to include evidence that is directly relevant to the credibility issue.

The failure to discuss Ms. Wolak's treatment history in any meaningful detail, together with the misconstruals and omissions of the evidence noted above, give rise to serious concerns as to the extent to which the ALJ in this case fully considered the record before her.   The Court recognizes that "SSR 96-7p . . . does not require an ALJ to analyze and elaborate on each of the seven factors set forth when making a credibility determination."  *Clay v. Apfel*, 64 F. Supp.2d 774, 781 (N.D. Ill. 1999).  But an ALJ must still sufficiently articulate the reasons for her position and build a logical bridge from the record to the credibility determination she reaches. *See Scott*, 297 F.3d at 595.  The seven factors in SSR 96-7p are a primary means for doing so, and their omission in this case prevents the Court from following the basis of the ALJ's reasoning or from concluding that she considered the appropriate factors that are relevant to Ms. Wolak's credibility.  Plaintiff's motion is granted on this issue.

**B.      The Treating Source Issue**

Ms. Wolak next argues that the ALJ erred in evaluating the reports of her treating physicians, Dr. Hennessey and Dr. Kondelis.  The ALJ determined that Dr. Hennessey's October 7, 2008 report should be given no significant weight because it did not set forth specific limitations and was issued three months after Ms. Wolak's cervical surgery.  Although the ALJ did not explain the significance of the second of these reasons, she presumably believed that a report issued post-surgery did not fully reflect Ms. Wolak's condition prior to the operation.  The ALJ did not assess Dr. Kondelis' opinion at all.  The Commissioner does not address the ALJ's

oversight of Dr. Kondelis' medical opinion, thereby waiving that portion of Ms. Wolak's claim.[7] *See Palmer v. Marion County*, 327 F.3d 588, 597-99 (7th Cir. 2003) (stating that claims not addressed in response to a summary judgment motion are deemed abandoned).

The Social Security regulations require an ALJ to give controlling weight to a treating physician's medical opinion when it is both well-supported by objective medical evidence and is not inconsistent with other substantial evidence in the record.[8] 20 C.F.R. § 404.1527(d); *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006). An ALJ may discount a treating physician's opinion, however, when it is internally inconsistent or contradicts the opinion of a consulting physician. *Schmidt*, 496 F.3d at 842. The regulations further provide that "[u]nless we give a treating source's opinion controlling weight . . . we consider all of the following factors in deciding the weight we give to any medical opinion." 20 C.F.R. § 404.1527(d)(2). These factors include the nature and length of the treatment relationship, the consistency with the record, and the physician's speciality. *Id.* Whatever his decision, an ALJ must provide a reasoned explanation of the weight assigned to a treating source's opinion. *Id.* ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

---

[7] The Commissioner does argue in a different section of the response that it is "likely" that the ALJ considered a note written by Dr. Kondelis on April 24, 2008 stating that Ms. Wolak was unable to work. (R. 378). That specific issue is addressed below, but the Commissioner's argument has no direct relevance to the ALJ's failure to weigh the conclusions evidenced in Dr. Kondelis' other treatment notes, such as limitations on Ms. Wolak's sit/stand abilities.

[8] A treating source is an individual's own "physician . . . or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 416.902. A claimant can have more than one treating medical source. *See Wates v. Barnhart*, 274 F. Supp.2d 1024, 1034-35 (E.D. Wis. 2003).

The ALJ in this case did not consider any of the required factors in assessing the medical opinions of either Dr. Hennessey or Dr. Kondelis. The ALJ did not discuss the fact that Dr. Kondelis is a pain specialist whose notes provided at least some support for Ms. Wolak's testimony at the hearing. For example, Plaintiff alleged that she cannot sit or stand for prolonged periods of time, a claim echoed by Dr. Kondelis' December 11, 2007 note stating that pain made it impossible for her to be "in one position for any period of time" and that "[s]he cannot sit, stand, or lie for any length of time without needing to shift." (R. 274). The ALJ also failed to take into consideration the length of the relationship between Ms. Wolak and Dr. Kondelis, the consistency of Dr. Kondelis' notes with the rest of the record, or any of the other factors required under the regulations for assigning weight to a treating physician's opinion.

The ALJ also overlooked the same factors in assessing Dr. Hennessey's opinion. The Commissioner argues that this was not erroneous because Dr. Hennessey's report contains a statement that Ms. Wolak was unable to work. As the Commissioner correctly notes, such a conclusion is not a medical opinion; it is an issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e)(1); *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001) ("[A] claimant is not entitled to disability benefits simply because her physician states that she is 'disabled' or unable to work. The Commissioner, not a doctor selected by a patient to treat her, decides whether a claimant is disabled."). That is not the reason the ALJ relied on to deny controlling weight to Dr. Hennessey's opinion, and a reviewing court does not provide reasons that the ALJ did not cite in the decision. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (stating that courts restrict review to the reasoning asserted in an ALJ's decision).

The ALJ explained her finding by stating that Dr. Hennessey's opinion did not set forth specific functional limitations. The Commissioner defends the ALJ's reasoning on this issue by relying on *Books v. Chater*, 91 F.3d 972 (7th Cir. 1996). In *Books*, an ALJ did not err by not giving weight to a doctor's statement that the claimant suffered from "chronic low back and bilateral leg pain secondary to facet arthrosis," as well as degenerative knee and wrist changes. *Books*, 91 F.3d at 978. The Seventh Circuit noted that such conclusions were not helpful to the ALJ because they did not address the extent to which the claimant retained the ability to carry out gainful employment. *Id.* The Commissioner overlooks that Dr. Hennessey's report goes beyond the language used in *Books* to include conclusions that *could* be relevant to Ms. Wolak's functional abilities. In specific, Dr. Hennessey indicated that she had marked limitations in her ability to complete a full workday, would require "an unreasonable number" of rest periods, and would have "significant" deficiencies in concentration, persistence, and pace. (R. 544). Unlike *Books*, Dr. Hennessey's opinion goes directly to Ms. Wolak's RFC, which SSR 96-8p defines as the ability to maintain "work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule)."[9] SSR 96-8p. Insofar as the ALJ believed that these statements, which are not noted in the decision, had only a limited value because they post-date Plaintiff's surgery, she was at least required to explain why they were not entitled to controlling weight for that period following the operation.

_____

[9] The report contains sections that asked Dr. Hennessey to indicate Ms. Wolak's sit/stand abilities. The physician did not enter items directly, but he made a marginal note that suggests some commentary on these functional limitations. It is not clear, however, what Dr. Hennessey meant, as his notations are largely illegible in the copy included in the record. (R. 543).

Social Security Ruling 96-5p makes clear that a physician's report may contain findings on a variety of physical and mental functions, and an ALJ can decide to reject some and adopt others. SSR 96-5p. Thus, even if the ALJ was not required to accept Dr. Hennessey's statement that Ms. Wolak was unable to work, she was still obligated to explain her reasons for not giving weight to those portions of the physician's report dealing with Ms. Wolak's limitations. She did not do so, and taken together with the fact that the ALJ did not consider the factors required for weighing a treating physician's report, the Court finds that substantial evidence does not support the evaluation given to Dr. Hennessey's report. Plaintiff's motion is granted on this issue.


**C.      The Closed Disability Period**

Ms. Wolak claims that the ALJ also erred by failing to consider whether she was disabled for a finite, or "closed," period of time. In a closed period, "[t]he decision-maker determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of his decision." *Waters v. Barnhart*, 276 F.3d 716, 719 (5th Cir. 2002) (citation omitted); *see also Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999). That said, the Court is unable to determine what period of time Ms. Wolak claims constitutes the closed period at issue in this case. Ms. Wolak summarizes her objection to the ALJ's decision by complaining that he found that she could perform sedentary work "at all times since her July 3, 2007" onset date to the time of the opinion. This diffuse and exceptionally broad description appears to encompass the entire span of the record before the Court. Plaintiff buttresses her claim by mentioning, in turn, that she was experiencing incapacitating pain one year prior to her July 29, 2008 surgery; had a three-month recovery period after the operation during which she

could not work; and points to treatment notes for November 16, 2007, April 24, 2008, and October 7, 2008 allegedly stating that she could not work.

The relevance of these specific citations to the record are unclear, however, as none of them support her claim. She points to Dr. Kondelis' April 24, 2008 note stating that her medical condition made it impossible for her to work. In itself, this statement does not mean that Plaintiff met the conditions for a closed period of disability because Dr. Kondelis' note involves a non-medical issue that was not binding on the ALJ. *Dixon*, 270 F.3d at 1177. Ms. Wolak also contends that Dr. Hennessey's October 7, 2008 opinion discussed above supports her position. But the orthopedist's opinion was issued several months after the surgery in question had been completed, and Ms. Wolak provides no argument on why it indicates an inability to work for the period prior to her operation or what stop date is indicated based on Dr. Hennessey's report. (R. 544). Finally, Plaintiff relies on Dr. Hennessey's October 26, 2007 treatment note to argue that her orthopedist found as early as that date that she was unable to work. This argument is factually incorrect because the note Ms. Wolak points to does not include such a statement; Dr. Hennessey only stated that Plaintiff herself reported that she could not work. (R. 257).

The Seventh Circuit has made clear that courts are not obligated to reconstruct arguments or provide research for litigants. *See*, *e.g.*, *United States v. McLee*, 436 F.3d 751, 760 (7th Cir. 2006); *United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003). In light of the fact that Ms. Wolak fails to identify when her alleged closed period began or when it closed, and given the lack of support provided by her specific record citations, the Court finds that her motion should be denied on this issue.

**D.      The Consultative Exam Issue**

Finally, Ms. Wolak argues that the ALJ should either have ordered a consultative examination of her or recontacted her treating doctor before finding that she was not disabled. She does not identify either Dr. Hennessey or Dr. Kondelis as the physician in question.  An ALJ can recontact medical sources when the medical evidence already in the record is insufficient to determine if a claimant is disabled.  20 C.F.R. § 404.1512(e).  *See also Skarbeck v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004).  Likewise, a consultative exam is used only for resolving a conflict or ambiguity in the record.  *Latkowski v. Barnhart*, 267 F. Supp.2d 891, 902 (N.D. Ill. 2003).  The regulations require such an exam when evidence is available from a treating source, when highly technical information is needed but is unavailable from the source, or when evidentiary conflicts must be resolved.  20 C.F.R. § 404.1519a.

Both of Ms. Wolak's claims are unsupported by any argument in her motion.  She fails to point out any conflict in the evidence that could, or should, have been resolved by a consultative examination.  Instead, she claims that the ALJ should have recontacted her physician because the ALJ "disputed" his opinion at the hearing.  The meaning of this argument is not clear, but it does not address the standard that governs whether an ALJ should recontact a medical source.  Insofar as Ms. Wolak means that the ALJ was required to do so because she did not give Dr. Hennessey's opinion controlling weight, she provides no authority for the proposition that such a finding meets the standard for recontacting a treating physician or for ordering a consultative exam.  Plaintiff's motion is denied on this point.

## V.     Conclusion

For the reasons stated above, Plaintiff's Motion for Summary Judgment [Doc. 20] is

granted in part and denied in part.  Accordingly, the ALJ's decision is remanded to the

Commissioner for further proceedings consistent with this opinion.

**ENTER ORDER:**

_____
**MARTIN C. ASHMAN**
United States Magistrate Judge

**Dated:**  November 16, 2011.